FILED
IN OPEN COURT

AUG - 3 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 1:17cr173 |
| | ) | |
| KARIM ADASSI | ) | |

## STATEMENT OF FACTS

The United States and the defendant, Karim Adassi, agree that at trial, the United States would have proven the following facts beyond a reasonable doubt:

1. From in or about March 2007, through in or about March 2015, in the Eastern District of Virginia and elsewhere, the defendant, Karim Adassi, knowingly and unlawfully executed a scheme and artifice to defraud a financial institution.

2. Karim Adassi is a 48-year old United States citizen from Tunisia who, at all times relevant to this case, resided at premises on Gum Springs Village Drive, in Alexandria, Virginia. Faycal Dahmani is a 48-year old naturalized United States citizen from Tunisia who now resides in Falls Church, Virginia.

3. American Quality Pizza, Inc., doing business as the New York Pizza Factory, was a business that, until July 2013, was operated by Tunisian immigrants Atef Hassen and Atef Amri, with locations in Annandale and Fairfax, Virginia. In late 2013, Hassen and Amri pled guilty in this district to wire fraud, and admitted their participation in a variety of fraud schemes centered around their creation of fraudulent documents.

4. Hassen and Amri admitted that they forged bank statements and created bogus payroll records in order to support loan applications that they knew would not be granted upon the basis

of truthful information. They admitted that they falsely inflated their income on loan applications, and submitting to mortgage lenders bogus earnings statements from the New York Pizza Factory to support their loan applications. They admitted that they submitted such bogus documents to obtain home mortgage loans for themselves, and that they created and distributed such bogus documents to their associates to enable those associates to obtain loans for which they would otherwise not be able to qualify.

5. On March 6, 2007, Faycal Dahmani signed a contract to purchase from Karim and Gabriella Adassi a home on Gum Springs Village Drive, in Alexandria, Virginia, for $395,000. On March 19, 2007, Dahmani signed under penalty of perjury an application for a loan from Bank of America to purchase the Gum Springs Village Drive property.

6. The loan application was granted and, on March 19, 2007, Dahmani closed the purchase of the Gum Springs Village Drive property with a loan from Bank of America in the amount of $395,000. After the existing loan on the property and other costs were paid off, Gabriella and Karim Adassi received $85,120.18 from the sale.

7. The Bank of America employee who handled the loan for the purchase of the home by Dahmani from Adassi was an individual referred to herein as "MB." MB had known both Adassi and Dahmani from the local Tunisian community even before the loan application was submitted. In about March 2007, Adassi and Dahmani asked MB to help Dahmani get a home mortgage to enable Dahmani to purchase Adassi's home.

8. On his loan application, Dahmani asserted under penalty of perjury that he was employed as a manager at the New York Pizza Factory with a monthly salary of $7,000, and that he had been employed at the New York Pizza Factory for two years. The assertions made on the

loan application were false, and the documents supplied to Bank of America to support Dahmani's application were bogus.

9. The copy of Dahmani's 2006 Federal Income Tax Return that was supplied to Bank of America reflected adjusted gross income (made up completely of wages, salaries, and tips) of $75,327. The adjusted gross income reported on the tax return that Dahmani actually filed with the IRS was only $1,773 (including wages, salaries, and tips of $64).

10. Bank of America's mortgage file also contains what purport to be two pay stubs or earnings statements from the New York Pizza Factory, Inc., at 7258 Columbia Pike in Annandale, Virginia, reflecting that Dahmani earned gross bi-weekly pays of $3500 on February 5, 2007 and on February 23, 2007. Those earning statements, however, were not genuine, and Dahmani never was employed by that business.

11. Dahmani never moved into the home after the sale and Adassi never moved out of it. Adassi never intended for Dahmani to live in the house, and never intended to move out of the house for Dahmani to live there; Adassi always intended that the house would remain under the control of Adassi. Adassi did not pay rent to Dahmani, and Dahmani made no mortgage payments.

12. The loan from Bank of America in March 2007 was arranged by Adassi, and, in connection with obtaining the loan, Dahmani never saw some of the documents that were submitted to Bank of America to support his loan application; those documents had been obtained and submitted to MB by Adassi.

13. In connection with the loan application, Dahmani never saw the pay stub for the period of February 1, 2007 through February 16, 2007, that was included in the loan application,

but had discussed it with Adassi, who told him that he (Adassi) would get the pay stub from Atef Amri.

14. By May 2009, the Gum Springs Village Drive property was in foreclosure, and by May 2010, the mortgage loan was over $58,000 in arrears on his loan to Bank of America. By October 2012, the outstanding unpaid balance of the loan secured by the Gum Springs Village Drive property was $525,757.56.

15. Extensive correspondence occurred between 2009 and 2013 regarding requests and applications for modification of the loan agreement secured by the Gum Springs Village Drive property. For example, Bank of America received a "Request for Modification and Affidavit" purportedly signed by Dahmani on March 12, 2011, as well as another "Request for Modification and Affidavit" purportedly signed by Dahmani on July 30, 2011; both asserted under penalty of perjury that the premises at Gum Springs Village Drive was owner-occupied and Dahmani's primary residence.

16. In response to the requests for modification, Bank of America repeatedly notified Dahmani by letters apparently sent by mail or FedEx to the Gum Springs Village Drive address that he needed to supply the bank with various documents. These documents included verification of employment; copies of his two most recent pay stubs; and - - if he was self-employed - - his most recent quarterly or year-to-date profit and loss statements.

17. In connection with the requests for modification, Adassi submitted to Bank of America what purported to be Dahmani's employment verification letters and pay stubs. One employment verification letter was from Atef Amri of the New York Pizza Factory, and asserted that Dahmani was a supervisor at the New York Pizza Factory and had worked there since 2008.

Pay stubs dated between March and October 2011 reflected that Dahmani was employed at American Quality Pizza, Inc., at 7258 Columbia Pike in Annandale, Virginia. Two other documents received by Bank of America and referencing a business known as Tele Auto, Inc., are described below. According to Adassi, this was done with Dahmani's knowledge.

18. In October 2012, Ocwen Loan Servicing, LLC ("Ocwen") assumed responsibility for servicing the mortgage loan secured by the Gum Springs Village Drive premises. On November 16, 2012, Ocwen notified Dahmani by letter to the Gum Springs Village Drive address that his outstanding loan balance would be reduced by nearly $300,000 (and the interest rate on his loan would be reduced from 6.63 percent to two percent) if he made three monthly payments of $1,165.19 by February 2013. According to Ocwen, "All you need to do to accept this offer is make your first Trial Period Payment. We already have the documentation we require on file."

19. Adassi made the three monthly payments of $1,165.19. Accordingly, a loan modification agreement with Ocwen that implemented the terms outlined in the letter of November 16, 2012, was signed in the name of Dahmani on June 18, 2013. As a result of the loan modification agreement, Ocwen reported to the Internal Revenue Service that it forgave Dahmani's debt in the amount of $290,950.23.

20. On August 26, 2015, Adassi told the FBI that he helped Dahmani obtain the loan modification, in some instances filling out paperwork which he provided the bank in support of the loan modification. Adassi admitted that he called the loan modification company on multiple occasions claiming to be Dahmani, giving information required by the company to complete the modification. Adassi admitted that he opened mail which came to 7840 Gum Springs Village

Drive that was addressed to Dahmani which showed that the mortgage was in default and the loan for the house was about to be foreclosed.

21. One document submitted to Bank of America in connection with a Request for Modification was a letter dated November 14, 2011. In pertinent part, the letter stated:

> My name is Faycal Faycal Dahmani owner of 7840 Gum Springs Village Dr Alexandria, VA 22306.
>
> I confirm that I receive between 100$ and 150$ a week from a part time job with TELE AUTO INC, my out of packet is 10$ gas and 5 $ lunch each trip. Since 01/01/2011. . . .
>
> Please let me know if you have any questions my phone # is 202-459-8649.

Adassi created that letter and sent it to Bank of America. The phone number included on that letter was Adassi's number.

22. Another document submitted to Bank of America in connection with a Request for Modification was a "Profit and Loss Statement" dated November 26, 2011. That statement purported to be from Dahmani at the Gum Springs Village Drive address, and listed income and expenses for the months of January through November 2011. The document bore two signatures; one signature appeared below the line "Please let me know if you have any questions, Faycal Dahmani." The second signature appeared below a signature block for a manager at Tel Auto, Inc. That document was created by Adassi and never shown to Dahmani before being submitted to Bank of America.

23. Tele Auto, Inc. is a car dealership with an address on Colonial Springs Boulevard in Alexandria, Virginia. The name on the "notice of process" address for the business as listed in the records of the State of West Virginia is Adassi's brother.

24. In November 2011, Adassi was, in fact, associated with Tele Auto, Inc., but Dahmani was not.

25. On March 2, 2015, Ocwen notified Dahmani by letter to the Gum Springs Village Drive address that he was in default for failing to make a mortgage payment since September 1, 2014.

26. The acts taken by Adassi in furtherance of the offense charged in this case, including the acts described above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

27. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

28. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: *(signature)*
Colleen E. Garcia
Gordon D. Kromberg
Assistant United States Attorneys

After consulting with my attorney, and pursuant to the Plea Agreement entered into this day between myself and the United States, I hereby stipulate that the above Statement of Facts is

true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 8/3/17

_____
Karim Adassi
Defendant

I am counsel for the defendant in this case. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 8/3/17

_____
Frank Salvato
Counsel for Karim Adassi